**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LENA LASHER,** <br><br> Plaintiff, <br><br> v. <br><br> **ANTHONY RUBINACCIO, et al.,** <br><br> Defendants. | Civil Action No. 18-2689 (ES) (JAD) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court are the motions to dismiss of defendants Anthony Rubinaccio, Thomas F.X. Bender, and the New Jersey State Board of Pharmacy (collectively, "Defendants"). (D.E. Nos. 23 & 34).[1] The Court has considered the parties' submissions[2] and rules on the motions without oral argument. *See* D.N.J. Civ. R. 78.1(b). For the reasons stated below, the motions are GRANTED.

**I.     Factual and Procedural Background**

The Court will "set out facts as they appear" in the amended complaint, *see Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012), but at times *pro se* plaintiff Lena Lasher's ("Plaintiff's") allegations are difficult to follow. (*See, e.g.*, Compl. at 2–3 ("[T]he Plaintiff did NOT freely or voluntarily waive her right to a her and thus avoiding doing the actual work that

---

[1]     Defendant Bender's motion to dismiss "incorporates the Brief and legal arguments set forth in [the other] Defendants' Motion to Dismiss for the sake of brevity and efficiency." (D.E. No. 34-1 at 2).

[2]     (D.E. No. 16, Amended Complaint ("Compl."); D.E. No. 23-1 ("Def. Br.")); D.E. No. 34-1 ("Bender Br."); D.E. Nos. 35–36; D.E. Nos. 40–42; D.E. No. 45; D.E. Nos. 47–48).

goes along with being a Board of Pharmacy President, Thomas F.X. Bender, did disservice to all Pharmacists in New Jersey and cheated the Plaintiff out of her right to due process [sic].").

In general, Plaintiff alleges that Defendants violated her procedural and substantive due process and equal protection rights under the Fourteenth Amendment. (*See, e.g.*, *id.* at 1 & 19). Those claims stem from the termination of her pharmacist's license. (*See id.* at 1–3).

Plaintiff was initially indicted on November 29, 2012, for an offense related to her practice as a pharmacist. (*Id.* at 1). Plaintiff asserts that that indictment was dropped on or around January 2015. (*Id.*).[3] That indictment, nonetheless, formed the basis for the termination of Plaintiff's pharmacist license: On September 30, 2015, the New Jersey State Board of Pharmacy ("the BOP") "forced [her] to surrender" the license by signing a consent order "under the duress of [a] threat to REVOKE her pharmacist license" because of the indictment. (*See id.* at 1). When Plaintiff requested a hearing prior to the September 30 termination of her license, "her attorneys told her the New Jersey Board of Pharmacy would revoke her license if she opt to a hearing, unless she surrender her license [sic]." (*Id.* at 15). Plaintiff asserts that the consent order and resulting surrender of her license were procured by "extortion" and "coerc[ion]" (*see id.* at 2–3 & 15); and thus she was "cheated . . . out of her right to due process" (*see id*. at 2–3).

In the time between the initial, 2012 indictment and the September 30, 2015 consent order, Plaintiff was indicted in an apparently separate criminal matter and convicted in federal court in New York for multiple crimes relating to the improper handling of prescription drugs. *See generally United States v. Riccio*, 43 F. Supp. 3d 301 (S.D.N.Y. 2014); (*see also* Compl. at 4–16).[4]

---

[3] Plaintiff refers to this initial indictment solely as the "11/29/2012 Indictment" and does not specify the grounds for the indictment. (*See* Compl. at 1).

[4] The exact date of the conviction is unclear. Plaintiff states the date of her conviction was September 2, 2015. (Compl. at 4). Defendants state Plaintiff was convicted May 15, 2015. (Def. Br. at 12). And a decision from the Court of Appeals for the Second Circuit on Plaintiff's appeal of her conviction states that "[o]n September 10, 2015,

2

Plaintiff alleges that that conviction was "entirely due to the deception of fraud committed by SEVEN executive officials and the District Court itself," including through allegedly perjured testimony, planted evidence, and intentional misapplication of the law. (*See* Compl. at 4; *see generally Id*. at 4–16).[5]

Plaintiff asserts that, after the conviction, she has twice attempted to appeal the termination of her license and request a hearing but was denied both times—on September 25, 2017, and January 22, 2018. (*Id*. at 2). Plaintiff characterizes Defendants' "refus[al of] Plaintiff's request to appeal her consent order and [have] a hearing to defend her license" as "BOP simply ignor[ing] the Plaintiff's request for due process because she is a Vietnamese female." (*See id*. at 2). Plaintiff also contests the surrender of her license because, she claims, "other white male pharmacists" were "not punished by the New Jersey Board of Pharmacy." (*Id*. at 16).

Plaintiff filed the instant suit on February 23, 2018 (*see* D.E. No. 1), and the amended complaint on June 12, 2018 (*see generally* Compl.). On the above facts, drawn from the amended complaint, the Court construes six claims. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed . . . .") (internal quotation marks omitted).

Firstly, Plaintiff alleges her substantive due process rights were violated because the "coerced" surrender of her license on September 30, 2015, was based on "fraudulent consent" and

---

following a ten-day trial, Lasher was found guilty by a jury" on five counts. *United States v. Lasher*, 661 F. App'x 25, 26 (2d Cir. 2016).
 The exact date of Plaintiff's conviction, however, will not affect the calculation of the statute of limitations: As discussed below, the latest of the possible dates is more than two years prior to the filing of the complaint.

[5]  Plaintiff may not bring claims on the basis of that criminal conviction now. *See Heck v. Humphrey*, 512 U.S. 477, 484–86 (1994). The Court observes, however, that Plaintiff's assertions regarding her conviction could be relevant insofar they relate to her apparent due process claims. (*See, e.g.*, Compl. at 4 (alleging that the BOP was "fully aware. . . of the many deceptions committed by the federal prosecutors")).

3

was tantamount to "extortion, a federal crime, in that it violates her *substantive due process right to pursue her occupation*" ("Claim One"). (*See id*. at 1 & 3 (emphasis added)).

Further, Plaintiff alleges her procedural due process rights were violated at least twice: when Defendants denied her "*right to a hearing* to pursue her occupation" on September 25, 2015 ("Claim Two"); and (2) when defendant "Rubinaccio . . . on 9/25/2017 and 1/22/*2018 refused . . . Plaintiff's request to appeal her consent order* and for a hearing to defend her license" ("Claim Three"). (*See id.* at 2–3 (emphasis added)). Within the context of her procedural due process claims, Plaintiff also claims that BOP "*libeled her* by posting the consent order on the internet" ("Claim Four"). (*See id.* at 3 & 15 (emphasis added)).

Finally, Plaintiff alleges that her equal protection rights were violated because (1) on September 30, 2015, her "license was revoked *based on her race, national origin, and sex*" ("Claim Five") (*see id*. at 16 (emphasis added)); and (2) "on 9/25/2017 and 1/22/2018" BOP "ignored . . . Plaintiff's request for due process *because she is a Vietnamese female*" ("Claim Six") (*see id*. at 2 (emphasis added)).

Plaintiff seeks damages and various kinds of injunctive relief as a result of these violations, including that "the consent order [be] declared null and void" and that "her pharmacist license [be] reactivated." (*See id.* at 19–20). In response, Defendants argue that Plaintiff's claims are barred by immunity and the statute of limitations and that Plaintiff has failed to state a claim. (*See, e.g.*, Def. Br. at 1–2; Bender Br. at 1).

## II.     Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." But, to survive a motion to

4

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). A complaint cannot suffice "if it tenders [only] 'naked assertion[s]' devoid of 'further factual enhancement,'" because while Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

Pursuant to the pleading regime established by *Twombly* and *Iqbal*, the Court of Appeals for this Circuit has promulgated a three-pronged test of the sufficiency of a complaint. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court considers "the elements a Plaintiff must plead to state a claim." *Id.* Second, the Court distinguishes the facts from the legal conclusions contained in the complaint, as the latter "are not entitled to an assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). That is, a complaint's "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Finally, the Court considers the complaint's remaining well-pleaded factual allegations and "determine[s] whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 679).

Throughout this process, the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *See, e.g.*, *McDermott v. Clondalkin Grp., Inc.*, 649 F.

5

App'x 263, 266 (3d Cir. 2016). And, further, "[i]n considering the defendants' motion to dismiss, the . . . Court [i]s required to interpret the pro se complaint liberally . . . ." *See, e.g.*, *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018).

### B. Statute of Limitations on Motion to Dismiss

The statute of limitations is an affirmative defense and, in general, must be stated in a responsive pleading. *See* Fed. R. Civ. P. 8(c)(1); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In this Circuit, however, the Court may adjudicate a statute of limitations defense in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), so long as "'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *See Schmidt*, 770 F.3d at 249. In other words, if the Court considers *only* the face of the complaint in determining if its claims are time-barred, a Rule 12(b)(6) motion to dismiss is an appropriate framework for adjudication of a statute of limitations defense. *See, e.g.*, *id.*

## III. Analysis

### A. Summary

The Court rules that Claims One, Two, and Five are time-barred by the two-year statute of limitations in New Jersey for § 1983 claims.[6] The Court rules, further, that Plaintiff has failed to state a claim with respect to Claims Three, Four, and Six: Claim Three alleges no cognizable deprivation of due process; Claim Four does not include an allegation that Defendants said anything *false*; and Claim Six rests on mere conclusory assertions. (*See generally Compl.*). Consequently, none of Claims Three, Four, and Six may survive a 12(b)(6) motion to dismiss.

---

[6] Plaintiff does not explicitly rely on § 1983, but because she asserts violations of her constitutional rights by state actors, 1983 is the appropriate vehicle for her lawsuit. *See, e.g.*, *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999) ("Section 1983 authorizes a party who has been deprived of a federal right under the color of state law to seek relief through 'an action at law, suit in equity, or other proper proceeding for redress.'"); *see also generally Brisco v. Lahue*, 460 U.S. 325 (1983).

6

*See, e.g.*, *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (ruling that the plaintiff "lacked a property interest . . . that was sufficient to trigger due process concerns"); *Waters v. Churchill*, 511 U.S. 661, 669 (1994) (recognizing that a "libel plaintiff must bear burden of proving that speech is false"); *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (ruling that a plaintiff's "conclusory allegation that . . . conduct deprived him of his rights under the Equal Protection Clause was insufficient even under the liberal notice pleading standard of Rule 8(a)").

### B. Statute of Limitations: Claims One, Two, and Five

"Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In New Jersey, where Plaintiffs claims arose, "personal injury claims are governed by a two-year state of limitations." *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 859–60 (3d Cir. 2014) (citing N.J. Stat. Ann. § 2A:14-2); *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010); (*see generally* Compl.).

On the other hand, federal law determines when a claim accrues. *See Dique*, 603 F.3d at 185–86 (quoting *Wallace*, 549 U.S. at 391). In the context of § 1983 claims, "'the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.'" *Id.*; *see also Pedersen v. Nat'l Collegiate Athletics Ass'n*, No. 14-2544, 2015 WL 7573200, at *3 n.5 (D.N.J. Nov. 24, 2015)) (stating that "the date of accrual is when the [p]laintiffs know[] or should know that the injury occurred, not when they realize it gives rise to a legally cognizable claim").

7

Here, Plaintiff has failed to bring Claims One, Two, and Five in the requisite two-year limitations period. More specifically, each of these claims arises from the surrender of her license on or before September 30, 2015:

- Claim One arises from the alleged "coerced" surrender of Plaintiff's license on September 30, 2015, which "violate[d] her substantive due process right to pursue her occupation." (*See* Compl. at 1 & 3).

- Claim Two arises from the alleged denial of a "right to a hearing to pursue her occupation" on September 25, 2015. (*See id.* at 2–3).

- Claim Five arises from the alleged deprivation of equal protection because "white male pharmacists" did not also surrender their licenses. (*See id*. at 16).

Accordingly, the statute of limitations began to run on Claims One, Two, and Five on September 30, 2015, at latest, when Plaintiff's license was surrendered (*see id.* at 1–3 & 16); and the latest date on which each of these three claims could have been filed was September 30, 2017. *See, e.g.*, *Estate of Lagano*, 769 F.3d at 861; *Pedersen*, 2015 WL 7573200, at *3 n.5. Plaintiff, however, did not file the initial complaint until February 23, 2018—nearly five months after the end of the limitations period. (*See generally* Compl.). Hence Claims One, Two, and Five are time-barred and must be dismissed with prejudice. *See, e.g.*, *Estate of Lagano*, 769 F.3d at 861; *Pedersen*, 2015 WL 7573200, at *3.

**C. Failure to State a Claim: Claim Three**

"To prevail on a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law." *Chambers v. Sch. Dist. of Phila. Bd. of*

*Educ.*, 587 F.3d 176, 194 (3d Cir. 2009). A professional license may constitute a property interest. *See, e.g., Barry v. Barchi*, 443 U.S. 55, 64 (1979); *Casella v. Pa. Interest on Lawyers Tr. Account Bd.*, 47 F. App'x 193, 195 (3d Cir. 2002); *Herz v. Degnan*, 648 F.2d 201, 208 (3d Cir. 1981).

Claim Three arises from Defendants' denial of Plaintiff's request for an opportunity to "appeal her consent order and for a hearing to defend her license" on September 25, 2017, and January 22, 2018. (*See* Compl. at 2). Plaintiff characterizes the denial as "BOP simply ignor[ing] the Plaintiff's request for due process." (*Id.*).[7] Plaintiff alleges no other facts as to how the denial of the appeal constitutes a violation of her procedural due process rights. (*See generally id.*). More importantly, Plaintiff does not identify a property interest in connection with the 2017 and 2018 hearing denials. (*See generally* Compl.). In contrast, Plaintiff identified a property interest in connection with the 2015 hearing denial—"her New Jersey pharmacy [sic] license" (*see id.* at 2 & 15)—but the complaint evidences no property interest plaintiff possessed on September 25, 2017, or afterward, given that her license had been surrendered years prior. (*See generally* Compl.).

Plaintiff, therefore, fails to state a procedural due process claim regarding the 2017 and 2018 hearing denials. *See, e.g.*, *Woodend v. Lenape Reg'l High Sch. Dist.*, 535 F. App'x 164, 167 (3d Cir. 2013) (recognizing that after a plaintiff "relinquishes his or her property interest" he or she "cannot [subsequently] claim a deprivation of [due process] rights"); *Torrey v. New Jersey*, No. 13-1192, 2014 U.S. Dist. LEXIS 31147, at *39 (D.N.J. March 11, 2014) (granting 12(b)(6) motion to dismiss claim of procedural due process violation where plaintiff had no "legitimate property interest in his former employment"); (*see also* Compl. at 2).

---

[7] The Court interprets this sentence to refer to Plaintiff's procedural due process rights. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (defining procedural due process to include a right to a hearing before an individual is deprived of a property interest).

### D. Failure to State a Claim: Claim Four

Claim Four, apparently sounding in libel, arises from the allegation that BOP "libeled [Plaintiff] by posting the fraudulent consent order on the internet to defame, embarrass, harm, shame and humiliate her." (*See* Compl. at 3). To state a libel claim based on the posting of the consent order, however, Plaintiff was required to allege that the order contains a *false* statement. *See Waters*, 511 U.S. at 669 (recognizing that a "libel plaintiff must bear burden of proving that speech is false"). Here, Plaintiff alleges merely that the consent was posted online and that she objects to its posting. (*See* Compl. at 3, 15 & 17). Accordingly, she has failed to state a claim on which relief may be granted. *See, e.g.*, *Botts v. New York Times Co.*, 106 F. Appx 109, 110 (3d Cir. 2004).[8]

### E. Failure to State a Claim: Claim Six

Plaintiff alleges that "BOP simply ignored the Plaintiff's request for due process because she is a Vietnamese female." (Compl. at 2). Yet the Complaint does not contain factual allegations that plausibly support the conclusion that Plaintiff's national origin or sex motivated the denial of a "request for due process." (*See generally* Compl.). Claim Six, then, rests entirely on a "mere conclusory statement[]," an "unadorned, the-defendant-unlawfully-harmed-me accusation" which has been repeatedly ruled insufficient to state a claim upon which relief can be granted. *See, e.g.*, *Iqbal*, 556 U.S. at 678. Defendants' motion to dismiss as to Claim Five is therefore granted. *See, e.g.*, *Young*, 160 F. App'x at 266 (ruling that a plaintiff's "conclusory allegation that . . . conduct deprived him of his rights under the Equal Protection Clause was insufficient even under the liberal notice pleading standard of Rule 8(a)").

---

[8] For the foregoing reasons, Plaintiffs' motions "requesting the Court to Order the Defendants to Remove the Plaintiff's Consent Order from the Internet" (D.E. Nos. 45 & 46) are DENIED.

**F. Immunity**

In addition to the statute of limitations and failure to state a claim, Defendants argue that Plaintiff's claims "should be dismissed with prejudice" on the basis that Defendants are entitled to sovereign immunity or quasi-judicial immunity and because "Defendants are not 'persons' under § 1983." (*See* Def. Br. at 1–2; Bender Br. at 2). In part, the Court agrees.

First, the Court concurs that Defendants are entitled to sovereign immunity and are not persons under § 1983. These two conclusions are related. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "[A]n entity that is an arm of the state" is also "not a 'person' under . . . § 1983." *Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 956 n.2 (3d Cir. 2019) (citing *Will*, 491 U.S. at 64, 70–71). Further, an entity that is an "arm of the state," and its officials, are entitled to sovereign immunity. *See Patterson*, 915 F.3d at 956; *Karns v. Shanahan*, 879 F.3d 504, 519 n.5 (3d Cir. 2018).

Here, Defendant BOP is an "arm of the state" and Defendants Bender and Rubinaccio are state officials being sued in their official capacities. *See id.*; (*see generally* Compl).[9] Accordingly,

---

[9] The Court of Appeals "appl[ies] a fact-intensive three-part test to determine whether an entity is an 'arm of the state' for Eleventh Amendment purposes . . . : (1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018) (cleaned up). All three of these factors clearly militate in favor of the conclusion that Defendant BOP is an "arm of the state." *See id.*

Under the New Jersey Tort Claims Act, the "State" is defined in relevant part as "any . . . board. . . of the State," N.J.S.A. 59:1-3; "the Board of Pharmacy of the State of New Jersey" (the BOP) is a "board . . . of the State," *see* N.J.S.A. § 52:17B-29; and the New Jersey "State Treasurer . . . pay[s] . . . claims against the State," N.J.S.A. § 59:12-1. Additionally, as just suggested, state law essentially *defines* the BOP as an arm of the state, *see* N.J.S.A. § 52:17B-29, and it is a "principal department" within the "the executive branch of the State Government,'" *see* N.J.S.A §§ 52:17B-1 & § 52:17B-29. Finally, New Jersey law "imposes sufficient constraints on [the BOP]'s autonomy to favor immunity," *see Maliandi v. Montclair State Univ.*, 845 F.3d 77, 96 (3d Cir. 2016), including that all members of the BOP are appointed and removable by the Governor, N.J.S.A. § 45:14-43(b) & (d), and the BOP must operate in accordance with New Jersey's Administrative Procedure Act, *see* N.J. Stat. Ann. § 45:14-47. Hence, as stated on pages 11 to 12 of the Court's Opinion, the BOP is an "arm of the state," and neither it nor its officials acting in their official capacities are persons under § 1983. *See Patterson*, 915 F.3d at 956 n.2; *Karns*, 879 F.3d at 519 n.5.

for those reasons, Defendants "cannot be sued for damages" under § 1983. *See Patterson*, 915 F.3d at 956 n.2. And the Court must dismiss all of Plaintiff's claims with prejudice *to the extent that they seek damages*. *See, e.g.*, *id.*

Plaintiff, however, seeks prospective injunctive relief in addition to damages—for instance, Plaintiff seeks that "the consent order [be] declared null and void" and that "her pharmacist license [be] reactivated." (*See* Compl. at 19–20; *see also* Compl. at 2 (recognizing that sovereign immunity does not apply "to the extent the Plaintiff seeks reinstatement of her pharmacy license and relief from an unconstitutional denial of her ability to practice pharmacy")).[10] *To that extent*, the Court will not dismiss her claims on the basis that Defendants are not "persons" or are entitled to sovereign immunity. *See, e.g.*, *Will*, 491 U.S. at 71 n.10 ("Of course a state official in his or her official capacity, *when sued for injunctive relief*, *would b*e a person under § 1983 . . . ." (emphasis added)); *Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011).

As noted above, Defendants also contend that Defendants Bender and Rubinaccio are entitled to quasi-judicial immunity. (*See* Def. Br. at 1–2; Bender Br. at 2). "As its name suggests, 'quasi-judicial' immunity is a doctrine under which government actors whose acts are relevantly similar to judging are immune from suit." *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006). BOP officials execute judicial functions under New Jersey law. *See, e.g.*, *In re Sorr*, No. A-5087-06T5, 2008 WL 216090, at *1 (N.J. Super. Ct. App. Div. Jan. 28, 2008) (recognizing the BOP's power to adjudge "violat[ion of] certain statutes and regulations applicable to . . . practice as a pharmacist" and to "impose[] a civil penalty"); *Supermarkets Gen. Corp. v. Sills*, 225 A.2d 728, 741–42 (N.J. Super. Ch. Div. 1966) (recognizing that BOP members have "discretionary power of

---

[10] Although Defendants *assert* that Plaintiff "fails to state a proper basis to invoke such relief" (Def. Br. at 28), Defendants do not cite any legal authority in support of that assertion, so the Court will not credit it. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

determining . . . whether particular behavior violates [a] statute" and are "equipped to adjudge"). Moreover, the Court of Appeals has ruled that members of a relevantly similar state board "enjoyed immunity from suit concerning the grant or denial of licenses." *See Arneault v. O'Toole*, 513 F. App'x 195, 199 (3d Cir. 2013). Defendants Bender and Rubinaccio, therefore, also enjoy quasi-judicial immunity concerning their revocation of Plaintiff's license—the only basis for her claims against them. *See id.*; (*see, e.g.*, Compl. at 1 & 2 (alleging that Defendants Bender and Rubinaccio "forced the Plaintiff to surrender her pharmacist license")).

**To summarize, then, the Court credits Defendants' immunity arguments except to the extent that Plaintiff seeks *prospective injunctive relief* from *the BOP*.**

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss:

- Claims One, Two, and Five are DISMISSED *with prejudice*;
- Claims Three, Four, and Six are DISMISSED *with prejudice* to the extent they seek damages; and
- Claims Three, Four, and Six are DISMISSED *without prejudice* to the extent that they seek prospective injunctive relief from the BOP.

**If Plaintiff can cure any deficiencies identified in this Opinion with amended claims, Plaintiff may do so *within thirty days* in a final, amended complaint. But the Court may dismiss the complaint *with prejudice* or close this case "if a timely amendment is not forthcoming within that time."** *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

An appropriate order will accompany this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
